UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

IN RE DR. DURRANI  :  Judge Timothy S. Black
MEDICAL MALPRACTICE CASES

Case Nos.: **1:16-cv-004 (lead)**, 1:16-cv-005, 1:16-cv-007, 1:16-cv-008, 1:16-cv-009, 1:16-cv-010, 1:16-cv-011, 1:16-cv-012, 1:16-cv-013, 1:16-cv-014, 1:16-cv-015, 1:16-cv-016, 1:16-cv-017, 1:16-cv-018, 1:16-cv-019, 1:16-cv-020, 1:16-cv-021, 1:16-cv-022, 1:16-cv-023, 1:16-cv-024, 1:16-cv-025, 1:16-cv-026, 1:16-cv-027, 1:16-cv-028, 1:16-cv-029, 1:16-cv-030, 1:16-cv-031, 1:16-cv-032, 1:16-cv-033, 1:16-cv-034, 1:16-cv-035, 1:16-cv-036, 1:16-cv-037, 1:16-cv-038, 1:16-cv-039, 1:16-cv-041, 1:16-cv-042, 1:16-cv-043, 1:16-cv-044, 1:16-cv-045, 1:16-cv-046, 1:16-cv-047, 1:16-cv-048, 1:16-cv-049, 1:16-cv-050, 1:16-cv-051, 1:16-cv-052, 1:16-cv-053, 1:16-cv-054, 1:16-cv-055, 1:16-cv-056, 1:16-cv-057, 1:16-cv-058, 1:16-cv-059, 1:16-cv-060, 1:16-cv-061, 1:16-cv-062, 1:16-cv-063, 1:16-cv-064, 1:16-cv-065, 1:16-cv-066, 1:16-cv-067, 1:16-cv-068, 1:16-cv-069, 1:16-cv-070, 1:16-cv-071, 1:16-cv-072, 1:16-cv-073, 1:16-cv-074, 1:16-cv-075, 1:16-cv-076, 1:16-cv-077, 1:16-cv-078, 1:16-cv-079, 1:16-cv-080, 1:16-cv-081, 1:16-cv-082, 1:16-cv-083, 1:16-cv-084, 1:16-cv-085, 1:16-cv-086, 1:16-cv-087, 1:16-cv-088, 1:16-cv-089, 1:16-cv-090, 1:16-cv-091, 1:16-cv-092, 1:16-cv-093, 1:16-cv-094, 1:16-cv-095, 1:16-cv-096, 1:16-cv-097, 1:16-cv-098, 1:16-cv-099, 1:16-cv-100, 1:16-cv-101, 1:16-cv-102, 1:16-cv-103, 1:16-cv-104, 1:16-cv-105, 1:16-cv-106, 1:16-cv-107, 1:16-cv-108, 1:16-cv-109, 1:16-cv-110, 1:16-cv-111, 1:16-cv-112, 1:16-cv-113, 1:16-cv-114, 1:16-cv-115, 1:16-cv-116, 1:16-cv-117, 1:16-cv-118, 1:16-cv-119, 1:16-cv-120, 1:16-cv-121, 1:16-cv-122, 1:16-cv-123, 1:16-cv-124, 1:16-cv-125, 1:16-cv-126, 1:16-cv-127, 1:16-cv-128, 1:16-cv-129, 1:16-cv-130, 1:16-cv-131, 1:16-cv-132, 1:16-cv-133, 1:16-cv-134, 1:16-cv-135, 1:16-cv-136, 1:16-cv-137, 1:16-cv-138, 1:16-cv-139, 1:16-cv-140, 1:16-cv-141, 1:16-cv-142, 1:16-cv-143, 1:16-cv-144, 1:16-cv-145, 1:16-cv-146, 1:16-cv-147, 1:16-cv-148, 1:16-cv-149, 1:16-cv-150, 1:16-cv-151, 1:16-cv-152, 1:16-cv-153, 1:16-cv-154, 1:16-cv-155, 1:16-cv-156, 1:16-cv-157, 1:16-cv-158, 1:16-cv-159, 1:16-cv-160, 1:16-cv-161, 1:16-cv-162, 1:16-cv-163, 1:16-cv-164, 1:16-cv-165, 1:16-cv-166, 1:16-cv-167, 1:16-cv-168, 1:16-cv-169, 1:16-cv-170, 1:16-cv-171, 1:16-cv-172, 1:16-cv-173, 1:16-cv-174, 1:16-cv-175, 1:16-cv-176, 1:16-cv-177, 1:16-cv-178, 1:16-cv-179, 1:16-cv-181, 1:16-cv-182, 1:16-cv-183, 1:16-cv-184, 1:16-cv-185, 1:16-cv-186, 1:16-cv-187, 1:16-cv-188, 1:16-cv-189, 1:16-cv-190, 1:16-cv-192, 1:16-cv-193, 1:16-cv-194, 1:16-cv-195, 1:16-cv-196, 1:16-cv-197, 1:16-cv-198, 1:16-cv-199, 1:16-cv-200, 1:16-cv-202, 1:16-cv-203, 1:16-cv-205, 1:16-cv-206, 1:16-cv-207, 1:16-cv-208, 1:16-cv-209, 1:16-cv-210, 1:16-cv-211, 1:16-cv-212, 1:16-cv-213, 1:16-cv-214, 1:16-cv-215, 1:16-cv-216, 1:16-cv-217, 1:16-cv-218, 1:16-cv-219, 1:16-cv-220, 1:16-cv-221, 1:16-cv-222, 1:16-cv-223, 1:16-cv-224, 1:16-cv-225, 1:16-cv-226, 1:16-cv-227, 1:16-cv-228, 1:16-cv-229, 1:16-cv-230, 1:16-cv-231, 1:16-cv-261, 1:16-cv-262, 1:16-cv-263, 1:16-cv-264, 1:16-cv-282

## ORDER REMANDING THESE CIVIL ACTIONS[1]

These civil actions are before the Court on Plaintiffs' motions for immediate remand and the parties' responsive memoranda.[2] Defendants allege that the Court has jurisdiction over these 227 civil actions pursuant to the mass action provision of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(11).

---

[1] Not all of these civil actions are subject to motions to remand. Nonetheless, all were removed pursuant to the mass action provision of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(11). For the reasons set forth in this Order, the Court finds that it does not have jurisdiction pursuant to that provision. Accordingly, the Court must remand all of these civil actions, regardless of whether motions to remand were filed. *See Thornton v. Southwest Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir.1990) (citation omitted) (the issue of "subject matter jurisdiction may be raised *sua sponte* at any juncture because a federal court lacks authority to hear a case without subject matter jurisdiction."); *see also Probus v. Charter Communications, LLC*, 234 Fed. App'x 404, 406 (6th Cir. 2007) ("Despite [the defendant's] failure to move to remand, the district court should have *sua sponte* addressed the issue of subject matter jurisdiction."); Fed. R. Civ. P. 12(h)(3) ("If the Court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

[2] Defendants filed motions for leave to file sur-replies on the ground that Plaintiffs raised several arguments for the first time in their replies. It is well-established that failure to raise an argument in a motion acts as a waiver of that argument. *See Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir. 2008). However, one of the primary purposes of this rule is to allow the non-moving party a fair opportunity to respond to all arguments. *Id.* As such, and for good cause shown, Defendants' motions for leave to file sur-replies are **GRANTED**. Because Defendants attached their proposed sur-replies to their motions for leave, Defendants need not re-file them. In formulating this Order, the Court considers all arguments presented, including those advanced in Plaintiffs' replies and Defendants' sur-replies.

2

## I. BACKGROUND

Most of these civil actions were filed in the Hamilton County Court of Common Pleas and ultimately assigned to Judge Robert Ruehlman.[3] Plaintiffs allege that Defendant Abubakar Atiq Durrani, M.D. ("Dr. Durrani") performed unnecessary surgeries on them that resulted in complications and injuries. Plaintiffs also bring claims against various hospital Defendants for negligence; negligent credentialing, supervision, and retention; fraud; and spoliation of evidence.

On December 7, 2015, in preparation for a case management conference regarding these cases, Plaintiffs' counsel submitted to Judge Ruehlman a lengthy binder of documents which included motions, descriptions of Plaintiffs' positions on pre-trial issues, and lists of cases. *See* Plaintiffs' Binder for December 14, 2015 Case Management Conference (the "Binder").

Plaintiffs' counsel claimed to represent Plaintiffs in 520 individual cases, including 172 cases already filed in Hamilton County, 258 cases that counsel planned to dismiss in Butler County and to refile in Hamilton County, and 40 cases that were the subject of a pending motion to transfer from Butler County to Hamilton County. *See* Binder at 8, 19–29, 209–23, 226–35.

---

[3] Some of these civil actions were originally filed in Hamilton County, and others were originally filed in Butler County. Plaintiffs voluntarily dismissed a number of the Butler County cases and re-filed them in Hamilton County. Some of the cases that remained pending in Butler County were also removed to this Court, on the same theory outlined in the Hamilton County cases.

3

In the Binder, Plaintiffs requested that Judge Ruehlman set "ALL" of these cases for one single, combined trial or, at a minimum, several smaller group trials. *See* Binder at 179–80 (listing "[o]ne scheduled trial for ALL cases [to begin] August 1, 2016" as Plaintiffs' top choice in a list of their "Preferences in Order of Preference for Trial Settings"); *id.* at 180 (listing "Group Trials with Many Options" as Plaintiffs' second choice); *id.* at 126 (stating that "[t]he Court has many options [for setting trial dates, including] [s]chedul[ing] one trial. . . . [or] [s]et[ting] trials by groups . . . ."); *id.* at 153–77 (attaching *Suida v. Howard*, Nos. C-000656, C-000687, 2002 WL 946188 (Ohio Ct. App. May 10, 2002) and citing the case for the proposition that "group trials [are] allowed]").

In a December 15, 2015 order, Judge Ruehlman scheduled several trials as follows:

1. February 29, 2016: trial in *Mike & Amber Sand v. Abubakar Atiq Durrani, et al.*, Hamilton County Common Pleas Case No. A1506694;

2. March 14, 2016: trial in *Steven Andrew Schultz v. Abubakar Atiq Durrani, et al.*, Hamilton County Common Pleas Case No. A 1506861;

3. May 2, 2016: trial in 14 cases involving Cincinnati Children's Hospital Medical Center;

4. August 1, 2016: trial in 24 cases involving "West Chester/UC Health and any hospital named as a Defendant in the C1C2/False Pannus cases";

5. January 2, 2017: a "massive group trial" in "all remaining Dr. Durrani cases," which "could take six months to a year."

General Order on all Dr. Durrani Hamilton County Cases for Case Management Conference December 14, 2015, Hamilton County Common Pleas Case No. A1506577

4

("General Order") at 11–15.

Defendants argue that, in the Binder, Plaintiffs proposed a joint trial of the claims of over 100 Plaintiffs, and thereby created a "mass action" under 28 U.S.C. §1332(d)(11), which "mass action" is subject to federal jurisdiction.

## II. STANDARD OF REVIEW

"Generally, a civil case brought in a state court may be removed by a defendant to federal court if it could have been brought there originally." *Rogers v. Wal–Mart Stores, Inc.,* 230 F.3d 868, 871 (6th Cir. 2000) (citing 28 U.S.C. § 1441(a)).  "<u>The removing party bears the burden of demonstrating federal jurisdiction, and all doubts should be resolved against removal</u>." *Harnden v. Jayco, Inc.*, 496 F.3d 579, 582 (6th Cir. 2007) (citing *Eastman v. Marine Mech. Corp.,* 438 F.3d 544, 549 (6th Cir. 2006)) (emphasis added).

## III. ANALYSIS

### A. CAFA and the Mass Action Provision

As explained by the Supreme Court:

> Congress enacted CAFA in order to "amend the procedures that apply to consideration of **interstate** class actions." 119 Stat. 4.  In doing so, Congress recognized that "[c]lass action lawsuits are an important and valuable part of the legal system." CAFA § 2.  <u>It was concerned, however, that certain requirements of federal diversity jurisdiction, 28 U.S.C. § 1332, had functioned to **"kee[p] cases of national importance"** in state courts rather than federal courts</u>.  CAFA § 2.

> CAFA accordingly loosened the requirements for diversity jurisdiction for two types of cases—"class actions" and "mass actions." The Act defines … "mass action" to mean "<u>any civil actio**n**</u> . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." § 1332(d)(11)(B)(i).

*Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S.Ct. 736, 739–40 (2014) (emphasis added). The Supreme Court also expressly found that **"**the term 'persons' in § 1332(d)(11)(B)(i) refers to the individuals who are proposing to join as plaintiffs <u>in a single action</u>[.]**"** *Id.* at 742 (emphasis added).

### B. Timeliness of Removal

As an initial matter, the Court considers whether the removals of these civil actions were timely. Defendants argue that they first ascertained the existence of the mass action when they received the Binder, and that they timely removed the cases within 30 days.

When a plaintiff's initial pleading does not state a case that is removable under CAFA, the defendant must file a notice of removal "within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may <u>first</u> be ascertained that the case is one which is or has become removable. 28 U.S.C. § 1446(b)(3).[4]

---

[4] Cases that were dismissed and refiled by Plaintiffs in Hamilton County *after* December 7, 2015 may be removable pursuant to 28 U.S.C. § 1446(b)(1), which provides that the notice of removal must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

6

Plaintiffs note that they moved to consolidate the Hamilton County cases as early as November 2014; that, in January 2015, an order of consolidation was entered in the Hamilton County cases over the Defendants' objection; and that the cases filed in Butler County had been consolidated under Judge Guckenberger (who has since recused). (*See* Ex. 1 to Plaintiffs' Motions to Remand; Plaintiffs' Replies.)[5] Plaintiffs argue that, prior to the submission of the Binder, they had been asking for joint trials for years.[6]

Plaintiffs' allegations of Defendants' judge-shopping cause the Court significant pause.[7] Nonetheless, Plaintiffs fail to provide any documentation showing prior requests for joint trials (which would negate the timeliness of the removals). Accordingly, the Court cannot find that the removals were not timely filed.[8]

---

[5] The relevant Ohio rule refers separately to requests for joint trials and requests for consolidation. *See* Ohio Civ. R. 42.

[6] Plaintiffs also argue that the Binder could not have triggered removal because it was neither a pleading, nor formally filed with the court. Plaintiffs' application of the statute is too narrow. Section 1446(b)(3) provides that Defendant may ascertain removability from "other paper." The Sixth Circuit has recognized a variety of documents as "other paper," including hearing transcripts and deposition testimony. *See Berera v. Mesa Med. Group, PLLC*, 779 F.3d 352, 364 (6th Cir. 2015) (citing Charles Alan Wright, *et al.*, 14C *Federal Practice and Procedure* § 3731 (4th ed. 2009) (finding that "documents such as deposition transcripts, answers to interrogatories and requests for admissions, . . . amendments to ad damnum clauses of complaints, and correspondence between the parties and their attorneys or between the attorneys" may constitute "other papers" under § 1446(b)(3))).

[7] Defendants removed these cases only after their attempts to remove Judge Ruehlman from the cases and to vacate the consolidation of the cases had failed in the appellate courts. (Ex. 1 to Plaintiffs' Motions to Remand).

[8] Indeed, the Sixth Circuit has held that the requirements of § 1446(b) are procedural rather than jurisdictional. *Music v. Arrowood Indem. Co.*, 632 F.3d 284, 287 (6th Cir. 2011). For this reason, even if Plaintiff could later produce such documentation, the Court would not be divested of jurisdiction.

7

### C. Statutory Requirements

CAFA defines a mass action as follows:

> [T]he term "mass action" means **any civil action** (except a [class action]) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a) [which is currently $75,000].

28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added).[9]

For federal jurisdiction to attach, a mass action must also satisfy several other requirements, which are applicable to class actions. *See* 28 U.S.C. § 1332(d)(11)(A). Those provisions include a minimal diversity requirement and a requirement that the aggregate amount in controversy for the mass action "exceeds the sum or value of $5,000,000, exclusive of interest and costs." *See* 28 U.S.C. § 1332(d)(2).[10] "Cases in this area necessarily are fact-specific, due to the need to apply CAFA's statutory principles to the particular jurisdictional facts involved." *Parson v. Johnson & Johnson*, 749 F.3d 879, 890 (10th Cir. 2014) (emphasis added).

---

[9] Following this definition, the statute lists a number of exclusions, which are not relevant here. *See* 28 U.S.C. § 1332(d)(11) (B)(ii).

[10] To the extent that Plaintiffs contend that the parties are not minimally diverse or that the amount in controversy requirement has not been met, Plaintiffs' arguments are not well taken. While Plaintiffs assert that Defendants fail to prove "any" of the mass action requirements, Plaintiffs provide no explanation for their belief that the amount in controversy is not satisfied. However, the Court finds that this requirement is easily met in light of the number of Plaintiffs, the catastrophic injuries alleged by Plaintiffs, Plaintiffs' requests for punitive damages, and past verdicts in related cases. As to the minimal diversity requirement, Plaintiffs allege that there is no federal diversity, but do not specifically contest that the parties are minimally diverse. And, for example, the record reflects that Plaintiff Steven Schultz is a citizen of Indiana, whereas Defendant UC Health is a citizen of Ohio.

Here, Plaintiffs argue that because these cases have not been presented as a single civil action, they are not removable as a mass action.  That is, Plaintiffs argue that their plethora of individual cases does not constitute a civil action (**singular**) in which the claims of 100 or more persons are proposed to be tried jointly.

It is well established that the plaintiff is the master of the complaint.  Accordingly, state court plaintiffs with common claims against a common defendant may bring separate cases with fewer than 100 plaintiffs each to avoid federal jurisdiction under CAFA.  *See, e.g., Atwell v. Boston Sci. Corp.*, 740 F.3d 1160, 1162–63 (8th Cir. 2013); *Scimone v. Carnival Corp.,* 720 F.3d 876, 881–82 (11th Cir. 2013); *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 953 (9th Cir. 2009).

However, some courts have approved mass action removal of civil actions having less than 100 plaintiffs where (1) the plaintiffs propose that their claims be tried jointly and (2) the civil actions, when combined, will involve at least 100 plaintiffs.  *See, e.g.*, *Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218, 1220 (9th Cir. 2014) (en banc) (removal proper where plaintiffs in several actions alleged injuries arising from their use of Darvocet and Darvon, among other pain relievers); *Atwell v. Boston Scientific Corp.*, 740 F.3d 1160, 1161–62 (8th Cir. 2013) (removal proper where three groups of plaintiffs alleged injuries arising from the use of transvaginal mesh); *In re Abbott Labs., Inc.*, 698 F.3d 568, 570–71 (7th Cir. 2012) (removal proper where several hundred plaintiffs filed

9

ten lawsuits alleging injuries arising from their use of Depakote ).[11]  The Sixth Circuit has not addressed this issue.

In the fact-specific context of the present cases, this Court is not convinced, especially in the absence of Sixth Circuit precedent, that the claims of *individual* Plaintiffs alleging *medical malpractice*, who filed distinct law suits, can be combined for the purpose of the "civil action" requirement and/or the "100 or more persons" requirement.  First, the plain language of the statute would seem to indicate that a mass action derives from a *single civil action*.  *See* 28 U.S.C. § 1332(d)(11)(B)(i) ("the term 'mass action' means any civil action . . .") (emphasis added).  Moreover, the Supreme Court has expressly found that **"**the term 'persons' in § 1332(d)(11)(B)(i) refers to the individuals who are proposing to join as plaintiffs in a single action[.]**"** *Mississippi ex rel. Hood*, 134 S.Ct. at 742 (emphasis supplied).

Here, we have hundreds of civil actions (with most including a single plaintiff), and not one civil action with more than 100 plaintiffs (or anything close to that).

Further, application of mass action jurisdiction in these circumstances would not be consistent with Congress' intent.  Unlike the cases considered by other circuits, the claims here do not present product liability claims, which clearly are **cases of national importance**, given nationwide usage of the products.  Instead, the cases here involve the actions of a single doctor, who performed all of the surgeries at issue in Cincinnati-area

---

[11]  Darvocet, Darvon, Depakote, and transvaginal mesh are products used extensively, and nationwide, thus rendering cases arising from their use "cases of national importance." *See also In re McKesson Corp, et al.*, Nos. 13-0504 to 13-0510, slip op. (6th Cir. Feb. 23, 2015).  The malpractice of a single doctor in one community does not equate with the nationwide use of prescription drugs or medical devices.

hospitals.  <u>Here, the underlying cases are state law medical malpractice claims, not cases of national importance.  These cases do not involve interstate controversies.  They present quintessentially localized, state law claims.</u>

In the absence of binding authority from the Supreme Court or the Sixth Circuit on the issue presented, and in light of the well-established principle that all doubts should be resolved against removal, the Court finds that these removed civil action**s** do <u>not</u> comprise a mass action as defined in 28 U.S.C. § 1332(d)(11).

### D. Totality of the Circumstances Exception

Plaintiffs argue that various statutory exceptions to the mass action provision would either require or allow the Court to decline jurisdiction.  Here, the Court focuses on the totality of the circumstances exception.  28 U.S.C. § 1332(d)(3).  That Section provides:

> A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of—
>
> **(A)** whether the claims asserted involve matters of national or interstate interest;
>
> **(B)** whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
>
> **(C)** whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
>
> **(D)** whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

11

>**(E)** whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
>
>**(F)** whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

Plaintiffs bear the burden of proof as to the applicability of this exception. *See Myrick v. WellPoint, Inc.,* 2014 WL 4073065, at *2 (7th Cir. Aug. 14, 2014).

As an initial matter, the Court must determine the extent to which Plaintiffs and Defendants are citizens of Ohio. Upon the Court's own review of the complaints filed in the state court cases, the Court concludes that at least one-third but less than two-thirds of Plaintiffs are citizens of Ohio. Defendants are local health care facilities/hospitals, the local Center for Advanced Spine Technologies (Dr. Durrani's wholly-owned business), and Dr. Durrani.

<u>Dr. Durrani is the only Defendant whose citizenship is disputed by Defendants</u>. Dr. Durrani lived, worked, and operated locally at the time these causes of actions arose. Dr. Durrani was a citizen of Ohio prior to his flight to Pakistan to avoid federal criminal prosecution. Accordingly, the Court considers Dr. Durrani a citizen of Ohio for the purposes of this inquiry.[12]

---

[12] Even if Dr. Durrani is not a citizen of Ohio for the purposes of this inquiry, the other primary Defendants are. If they were not, any Defendant could have removed a number of these cases pursuant to traditional diversity jurisdiction principles . . . but nobody did.

12

Second, the Court must consider the various factors set forth in 28 U.S.C. § 1332(d)(3)(A)–(F). These civil actions are of local concern, because they are medical malpractice actions arising out of the actions of a single local doctor. Plaintiffs' claims are governed solely by Ohio law. By filing individual civil actions based solely on state law, Plaintiffs clearly sought to avoid federal jurisdiction. Given the location of the surgeries at issue—Hamilton County and Butler County—each has a distinct nexus with Plaintiffs, Defendants, and the alleged harm. Upon the Court's own review of the complaints filed in the state court cases, the Court determines that the number of Plaintiffs from Ohio is substantially larger than the number of citizens from any other state.[13] The only factor that cuts against remand is whether, during the last three years, one or more class actions asserting similar claims on behalf of the same or other persons have been filed.[14]

While it is not a factor explicitly mentioned in the statute, the Court also considers the procedural history of these cases under the rubric of the totality of the circumstances. The majority of these cases have been pending in state courts since 2014. However,

---

[13] There are also some Plaintiffs from Kentucky (where Plaintiffs' lawyers have their offices) and Indiana, portions of which, along with portions of Ohio, comprise the Greater Cincinnati area.

[14] Even then, the class actions referenced in Defendants' briefs involve billing practices and claims against the hospital defendants for negligent credentialing, supervision, and retention; and fraud. While there is admittedly some overlap with the issues at stake in these case, <u>the class actions do not involve medical malpractice claims</u>.

**Defendants only moved for removal once Judge Ruehlman issued rulings that were highly unfavorable to Defendants**[15] **and set trial dates** (beginning on February 29, 2016). The Court does not condone Defendants' attempts to undo a state court judge's dutiful work on the eve of trial. Defendants should not be permitted to game the system to remove long-pending state court cases. While both sides have engaged in their fair share of forum shopping—it is time to get on with it.

Weighing the totality of the circumstances, the Court finds that the interests of justice are served by remanding these civil actions.

### E. Attorney's Fees and Costs

Plaintiffs seek attorney's fees and costs pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.*

"Absent unusual circumstances, courts may award attorneys' fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). An award of attorneys' fees under § 1447(c) "is inappropriate where the defendant's attempt to remove the action was 'fairly supportable,' or where there has not been at least some finding of fault with the defendant's decision to remove." *Chase Manhattan Mortg. Corp. v. Smith*, 507 F.3d 910, 913 (6th Cir. 2007).

---

[15] *See, e.g.,* Judge Ruehlman's General Order of December 15, 2015 at pages 2-4, "Proposed Sanction Order for Dr. Durrani's Flight" and "Proposed Instruction to the Jury." (*See* Case No. 1:16-cv-004 (Lead Case), Doc. 1, Exhibit C, PAGEID# 329-331).

While not prevailing, Defendants' arguments are at least objectively reasonable, in light of the lack of controlling Sixth Circuit precedent regarding the mass action provisions. *Cf. A Forever Recovery, Inc. v. Twp. of Pennfield*, 606 Fed. App'x 279, 281 (6th Cir. 2015) (noting that a defendant lacks an objectively reasonable basis for removal where "well-settled case law makes it clear that federal courts lack jurisdiction to hear the case."). The Court finds that, notwithstanding the number of cases that were removed, there are no unusual circumstances which would justify an award of fees and costs. Accordingly, the Court declines to award Plaintiffs attorney's fees and costs pursuant to 28 U.S.C. § 1447(c).

## IV. CONCLUSION

Accordingly, for the foregoing reasons:

1. Plaintiffs' motions to remand are **GRANTED**;

2. These cases are to be **REMANDED** to the state court from which they were removed;

3. However, enforcement of this Order is hereby **STAYED** pending the outcome of any accepted appeal by the Court of Appeals for the Sixth Circuit;

4. **The Clerk SHALL NOT BEGIN EFFECTUATING REMAND until this Court specifically directs via entry of a new, separate Order**.

**IT IS SO ORDERED**.

Date: 2/13/2016              *s/ Timothy S. Black*
                             Timothy S. Black
                             United States District Judge